HOUSEHOLD GOODS FORWARDERS
ASSOCIATION OF AMERICA,
INC., Petitioner,

v.

FEDERAL MARITIME COMMISSION
and the United States of America,
Respondents,

United States Lines, Inc., Sea-Land
Service, Inc., Farrell Lines,
Incorporated, Intervenors.

No. 78–1425.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 25, 1979.
Decided June 3, 1980.

Alan F. Wohlstetter, Washington, D.C., with whom Edward A. Ryan, Washington, D.C., was on the brief, for petitioner.

Carol J. Neustadt, Atty., Federal Maritime Commission, Washington, D.C., with whom Edward G. Gruis, Deputy Gen. Counsel, Federal Maritime Commission, John J. Powers, III and Robert J. Wiggers, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondent. Barry Grossman, Atty., Dept. of Justice, Washington, D.C., also entered an appearance, for respondents.

Russell T. Weil and Elizabeth A. Ritvo, Washington, D.C., were on the brief, for intervenor, United States Lines, Inc.

Edward M. Shea, Washington, D.C., was on the brief, for intervenor, Sea-Land Service, Inc.

James N. Jacobi, Washington, D.C., was on the brief, for intervenor, Farrell Lines, Incorporated, Richard W. Kurrus, Washington, D.C., also entered an appearance for Farrell Lines, Incorporated.

Before WRIGHT, Chief Judge, ROBINSON, Circuit Judge, and LARSON,* United States District Judge for the District of Minnesota.

Opinion Per Curiam.

PER CURIAM:

Under review are two orders of the Federal Maritime Commission which, in effect, permit United States flag carriers to charge one rate for overseas carriage of household goods shipped by the Military Sealift Command (MSC) while requiring members of the Household Goods Forwarders Association (HGFA), the petitioner, to pay another—usually higher—rate for like transportation of such cargo.[1] Petitioner contends

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d) (1976).

1. *Household Goods Forwarders Ass'n v. American Export Lines*, FMC No. 73–79 (May 18,

1977), Joint Appendix (J.App.) 290 [hereinafter cited as "order of May 18, 1977"]; *Household Goods Forwarders Ass'n v. American Export Lines*, FMC No. 73–79 (Mar. 14, 1978), J.App.

that the orders violate Section 17 of the Shipping Act of 1916[2] which, *inter alia*, prohibits rates that are "unjustly discriminatory between shippers."[3] The sole issue for decision is whether the Commission properly determined that the difference in rates passed muster under the statutory test.

The cargo in question consists of the household belongings of United States military personnel in transit between Atlantic coast ports in the United States and ports in continental Europe lying between Bordeaux, France and Hamburg, Germany. The Department of Defense (DOD), the agency responsible for arranging transportation of these goods, employs two methods of shipment, choosing the means "'most practical' in a particular situation."[4] Some items are shipped directly by MSC, while others are handled by members of petitioner association. Petitioner's members are non-vessel operating carriers (NVO's) who provide common carrier services to DOD and other customers pursuant to tariffs filed with FMC. They offer packing assistance and door-to-door transportation, and assume liability throughout the entire movement of the goods. For transoceanic shipment the NVO's utilize the services of vessel-operating common carriers whose rates also are set forth in tariffs filed with FMC.

Both MSC and HGFA shipments move in international commerce under government bills of lading issued by DOD. HGFA members, however, must pay vessel rates for the specific category "United States government household goods," while containers of household goods shipped by MSC are transported at rates fixed for the broad category "military cargo, N.O.S." (not otherwise specified) set forth in the carriers' Military Sealift Command tariff.

Since 1967, MSC rates have been established for six-month periods through a competitive procedure whereby the carriers submit bids in response to a "request for proposals" (RFP) issued by MSC. The RFP system is based on a simplified rate structure consisting of three classifications: "military cargo, vehicles," "military cargo, refrigerated," and "military cargo, N.O.S." Despite the vessel-operating carriers' efforts to establish a separate category for military household goods,[5] MSC has insisted that these items be included among the wide variety of articles classified as "military cargo, N.O.S."[6] Because of the con-

---

290 (order denying reconsideration) [hereinafter cited as "order denying reconsideration"].

**2.** 46 U.S.C. § 816 (1976).

**3.** In pertinent part § 17 of the Shipping Act provides:

No common carrier by water in foreign commerce shall demand, charge, or collect any rate, fare, or charge which is unjustly discriminatory between shippers or ports, or unjustly prejudicial to exporters of the United States as compared with their foreign competitors. Whenever the Federal Maritime Commission finds that any such rate, fare, or charge is demanded, charged, or collected it may alter the same to the extent necessary to correct such unjust discrimination or prejudice and make an order that the carrier shall discontinue demanding, charging, or collecting any such unjustly discriminatory or prejudicial rate, fare, or charge. 46 U.S.C. § 816(1976).

**4.** Order denying reconsideration, *supra* note 1, at 7, J.App. 296.

**5.** The vessel-operating carriers have sought for several years to change the current MSC tariff designations. They "have long recognized that household goods are a distinct cargo classification, which should, like Refrigerated Cargo and wheeled or tracked vehicles, be broken out of the general Cargo N.O.S. category for specific rate bidding." Joint Stipulation of Parties, J.App. 29–30. The RFP's however, "have been constructed in such a manner that a response to the current RFP and RFP's in the recent past, which did not include household goods as part of Cargo N.O.S., would have constituted an unresponsive bid. . . ." *Id.*

**6.** Household goods comprise only a small portion of the total cargo mix encompassed by the classification "military cargo, N.O.S." There is no allegation that the MSC rate does not fully reimburse the vessel-operating carriers for their distributed costs, as required by FMC's General Order 29. Regulations Governing Level of Military Rates, 46 C.F.R. § 549.3 (1979). The parties have stipulated that household goods have not and cannot be the rate-determining factor for the "cargo, N.O.S." rate. Joint Stipulation of Parties, J.App. 28.

glomerate nature of the category, MSC rates for "military cargo, N.O.S." are generally lower than carriers' rates for "United States government household goods."[7]

Petitioner contends that the existence of this rate differential constitutes a per se violation of Section 17. The Commission agreed that the rates frequently differ substantially, but held that these variations were not unjustified.[8] The Commission found that MSC, by virtue of its position as an exceptionally high-volume shipper, has the power to insist upon competitive bidding by vessel operators interested in its business and to impose conditions upon these carriers; one such condition has been the inclusion of household goods in the category "military cargo, N.O.S." As the Commission found, however, the resulting disparity in rates does not transgress Section 17.

MSC's competitive bidding practices have been upheld by this court,[9] and the classification of household goods within the "cargo, N.O.S." category is recognized as incidental to MSC's economic power to solicit bids.[10] There can be no valid objection to rate practices spurred by commonplace commercial considerations, such as volume of business tendered;[11] as the Commission stated, "[a] carrier may reasonably and fairly accommodate the special needs of any shipper—including MSC."[12] Particularly where, as here, the vessel operators involved are only responding to MSC's invitation to bid, the Commission has not overstepped the boundaries of its authority by refusing to penalize the successful carriers.[13]

---

**7.** This does not mean that MSC always pays *lower* rates. Indeed, at one point the Commission nearly dismissed the instant proceeding as moot when MSC's rates appeared higher than those charged petitioner's members. However, because a § 17 violation does not necessitate a showing of detriment to any particular carrier, the Commission ultimately resolved the proceeding on the merits. *Household Goods Forwarders Ass'n v. American Export Lines, supra,* note 1, at 1, 2, J.App. 290, 291 (order denying reconsideration).

**8.** The Commission found that petitioner had not "even attempted to demonstrate the amount of injury, if any, it is suffering as a result of MSC's use of a 'Cargo N.O.S.' rate." Order of May 18, 1977, *supra* note 1, at 8, J.App. 257. Moreover, "HGFA [has] concede[d] that [the vessel-operating carriers'] rates are reasonable, and that its members are fully reimbursed for the cost of ocean freight by the Department of Defense." *Id.*

**9.** *American Export Isbrandtsen Lines, Inc. v. FMC,* 127 U.S.App.D.C. 62, 74, 380 F.2d 609, 621 (1967) (the competitive bidding requirements of RFP 100 do not constitute "unjust device[s] or means" under section 16 of the Shipping Act, 46 U.S.C. § 815 (1976)).

**10.** See order denying reconsideration, *supra* note 1, at 10, J.App. 299; Joint Stipulation of Parties, J.App. 29–30.

**11.** See *ICC v. Baltimore & O. Ry.,* 145 U.S. 263, 281, 12 S.Ct. 844, 849, 36 L.Ed. 699, 705 (1892) (different rates for passengers in parties of ten or more); *Coal to New York Harbor Area,* 311 I.C.C. 355, 365–368 (1960) (different rates for shippers of a minimum volume within one year).

**12.** Order of May 18, 1977, *supra* note 1, at 6 n.8, J.App. 255 n.8 (emphasis deleted).

**13.** *American Isbrandtsen Lines, Inc. v. FMC,* 409 F.2d 1258, 1260 (2d Cir. 1969). In this case the Second Circuit held that the difference in rates carriers charged to the State Department and to the Defense Department was merely the result of a choice of procedure by these two governmental agencies. Although separate agencies were involved, the court took the view that they should be treated as one shipper since the disparity in rates "was the result of a choice by the United States Government, the world's largest shipper, to use different methods of dealing with the carriers depending on which of its departments was doing the shipping . . . ." *Id.* In sum, the rates were discriminatory, but the divergence was not "unjust" within the meaning of the statute.

Mindful of *American Isbrandtsen Lines, Inc., supra,* the Commission, in the first of the two orders under review, held that once again only one shipper is involved in the instant proceeding, because the United States Government is the real party in interest. It is the Commission's view that although MSC and the petitioner association may appear to be different shippers, in reality HGFA members are not operating independently in this situation; rather, they are acting as the "alter egos" of the Defense Department. Order of May 18, 1977, *supra* note 1, at 7, J.App. 256. Similarly, in the order denying reconsideration, the Commission noted that "[i]t could alternatively be stated, that insofar as the equalitarian purposes of section 17 are concerned, MSC and HGFA must be considered as though they were a single shipper." Order denying reconsideration, *supra* note 1, at 10 n.9, J.App. 299 n.9.

In reality, petitioner's grievance is directed more nearly toward MSC's inclusion of household goods within the N.O.S. category. In the Commission's estimation, it is preferable to utilize the rulemaking functions of the agency to effect any necessary changes in this area rather than to permit special-interest groups to attack piecemeal the procurement practices of the Government.[14] We perceive no legal infirmity in that approach. The decision of the Commission is accordingly affirmed.

*So ordered.*

Although it appears that the Commission has correctly applied the Second Circuit's ruling to the facts of the case at bar, we are not called upon to decide the question whether only one shipper is involved here since our ruling with respect to the propriety of treating the Government as any other high-volume shipper is dispositive of the instant case.

14. Order denying reconsideration, *supra* note 1, at 8–9, J.App. 297–298.

We note that the Commission has undertaken a study of present military cargo operations in light of Pub.L. No. 93–487, 88 Stat. 1463 (codified at 46 U.S.C. § 845b (1976)), which repealed former § 6 of the Intercoastal Shipping Act, ch. 199, § 4, 47 Stat. 1427 (renumbered as § 6, Act of June 23, 1938, ch. 600, § 43(b), 52 Stat. 964), and modified § 5 of that Act, Intercoastal Shipping Act, ch. 199 (§ 5 as added, Act of June 23, 1938, ch. 600, § 43(a), 52 Stat. 964), in order to delegate to the Commission supervisory and regulatory authority over Governmental shipping in the domestic offshore trades identical to that currently held by the Commission with respect to commercial carriage in these areas. 46 U.S.C. § 845b (1976). Pub.L. No. 93–487, by its terms, prohibits special rates for domestic intercoastal transportation of charitable and governmental cargo—reductions permissible prior to the enactment of this legislation.

The case before us involves international rather than domestic shipping of governmental goods, and on its face Pub.L. No. 93–487 appears to have no effect on foreign commerce. Moreover, although special rates for governmental cargo are not expressly forbidden by the Shipping Act, 46 U.S.C. §§ 801–842 (1976), we note that FMC does have regulatory authority over all shipping in foreign commerce. 46 U.S.C. § 817 (1976). See Regulations Governing Level of Military Rates, *supra* note 6. The Commission's regulations provide that "[a]ll military cargo rates must, at a minimum, cover the offering carrier's fully distributed cost. . . ." *Id.* We need not reach the question of the legitimacy of reduced rates in *international* commerce to the Government *qua* Government in the circumstances of this case.